HEATHER S. WHITE (7674)
NATHAN R. SKEEN (12662)
DANI N. CEPERNICH (14051)
SNOW CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone: (801) 521-9000
hsw@scmlaw.com
nrs@scmlaw.com
dnc@scmlaw.com

*Attorneys for Defendant Provo City*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CORY COLLETT, BRIEANNE VAN DE GRAAFF, PAULA CRAIG, KJIRSTEN ADAMS, and ROBYN NEWELL,<br><br>Plaintiffs,<br>vs.<br><br>PROVO CITY, UTAH, and JOHN KING, an individual,<br><br>Defendants. | **PROVO CITY'S MOTION TO DISMISS PLAINTIFFS' EIGHTH CAUSE OF ACTION AND THEIR CLAIMS FOR PUNITIVE DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Case No. 2:18CV280CW<br><br>Judge Clark Waddoups<br>Magistrate Judge Warner<br><br>**HEARING REQUESTED** |

## RELIEF REQUESTED

Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Provo City moves to dismiss the eighth cause of action for negligent employment, supervision and retention and the claims for punitive damages and declaratory and injunctive

relief Plaintiffs Cory Collett, Brieanne Van De Graaff, Paula Craig, Kjirsten Adams, and Robyn Newell have asserted against it.[1]

Plaintiffs lack standing to seek the requested declaratory and injunctive relief as they have not alleged there is any chance, let alone a "good chance," of being subjected to sexual harassment while working for Provo City in the future.  Under Utah's Governmental Immunity Act, Provo City is immune from Plaintiff's eighth cause of action.  Finally, punitive damages are not available against municipalities, such as Provo City, under either Utah law or 42 U.S.C. § 1983.

## STATEMENT OF FACTS[2]

Plaintiffs have brought this case against Provo City and its former Chief of Police, John King, asserting several claims based on alleged sexual misconduct of Mr. King.  Given the limited scope of this motion, the following is not intended to be a complete recitation of Plaintiffs' allegations.

1. Provo City hired Mr. King as its Chief of Police sometime in November 2013. (Compl. ¶¶ 22-23.)

2. Shortly after he was hired, Mr. King "began engaging in inappropriate conduct with employees."  (*Id.* ¶ 25.)

---

[1] Provo City has separately answered Plaintiffs' remaining cause of action against it.

[2] Provo City recognizes that at the motion to dismiss stage, the Court must accept all well-pleaded factual allegations as true.  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (discussing standard for Rule 12(b)(6) motion); *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 899 (10th Cir. 2016), *cert. denied*, 138 S. Ct. 130, 199 L. Ed. 2d 184 (2017), and *cert. denied*, 138 S. Ct. 78, 199 L. Ed. 2d 184 (2017) (discussing standard for motion to dismiss based on lack of standing).  Accordingly, the following facts are taken from Plaintiffs; Complaint.  Provo City does not admit the truth of any of the facts included below and specifically reserves the right to challenge the same at later stages of these proceedings.

3. "Chief King spent a lot more time in the dispatch center compared to his predecessors. He would stand uncomfortably close behind dispatchers, who were all female, touch their shoulders, look down their shirts, and stare at their breasts." (*Id.* ¶ 26.)

4. Ms. Collett alleges Mr. King engaged in such conduct with her and additionally made inappropriate comments about her body. (*Id.* ¶¶ 27-31.)

5. Ms. Collett resigned from her position with the City in approximately July 2014. (*Id.* ¶ 32.)

6. Ms. Craig alleges Mr. King engaged in the above-described conduct with her and additionally made inappropriate advances and "groped" her breast. (*Id.* ¶¶ 46-60.)

7. Ms. Adams alleges Mr. King engaged in the above-described conduct with her and additionally made inappropriate advances and rubbed her leg on one occasion when he had her ride in his car with him to lunch. (*Id.* ¶¶ 64-74.)

8. Ms. Newell alleges Mr. King engaged in the above-described conduct with her and additionally sexually assaulted her on four or five separate occasions by "groping" her breast while "hugging" her. (*Id.* ¶¶ 79-82.)

9. Ms. Van De Graaff alleges Mr. King engaged in the above-described conduct with her and additionally "physically touched, kissed, [] groped" and raped her. (*Id.* ¶¶ 104-11.)

10. Provo City ultimately placed Mr. King on administrative leave and demanded his resignation. (*Id.* ¶¶ 115, 117.)

11. Mr. King resigned and no longer works for Provo City. (*Id.* ¶ 55.)

12. There is no allegation that any of Plaintiffs are likely to experience further sexual harassment or assault from Mr. King. (*See* Compl.)

13. Nor are there any allegations that any of Plaintiffs are likely to experience sexual harassment or assault from any other supervisor or superior while employed by Provo City. (*See* Compl.)

14. Based on the above incidents, Plaintiffs (or some of them) have asserted equal protection and substantive due process claims against Mr. King and Provo City under § 1983; state law claims for intentional infliction of emotional distress, assault, battery, and false imprisonment against Mr. King; and a state law claim for negligent employment, supervision, and retention against Provo City. (*Id.* ¶¶ 125-92.)

15. In connection with their municipal liability claims against Provo City under § 1983, Plaintiffs have alleged Provo City is liable for Mr. King's sexual misconduct because he was a final policymaker for the City and because Provo City was deliberately indifferent to Mr. King's sexual misconduct. (*Id.* ¶¶ 141-61.)

16. In connection with their state law negligence claim against Provo City, Plaintiffs have alleged

> Provo breached that duty by, among other things, failing to properly investigate Chief King's background before his hiring; by hiring King despite easily discovered information that would have warned Provo of King's proclivity for sexual misconduct; by failing to adequately supervise King's conduct toward employees, volunteers, and citizens; and/or by retaining Chief King in a policy-making position after receiving complaints of Chief King's sexual and other misconduct.

(*Id.* ¶ 191.)

17. They have further alleged, "As a direct and foreseeable consequence of Provo's negligence in hiring, failing to supervise, and retaining King, [Plaintiffs] suffered the injuries described above." (*Id.* ¶ 192.)

18. Plaintiffs have asserted a claim for punitive damages against Provo City. (*Id.* at 28, ¶ 7 of Prayer for Relief.)

19. They have additionally requested the following non-monetary damages against Provo City:

   a. The institution of approved Annual Harassment, Discrimination, and Retaliation Training for all Provo City Police Department supervisors, officers, and employees (including additional approved training for Human Resource employees);
   b. The institution of approved Annual Harassment, Discrimination, and Retaliation Training for all members of the Provo City Mayor's Office;
   c. The institution of approved mandatory guidelines for the confidential investigation and resolution of any complaint or claim of harassment or discrimination lodged against the Provo City Police, with such guidelines to include an independent, extra-Departmental process for reporting, investigation, and resolution of any such complaints or claims;
   d. The institution of approved guidelines for the full and complete vetting of the hiring and/or promotion of individuals as Chief of Police, supervisor, and/or other managerial or supervisory position; and
   e. The institution of a third-party hotline and independent service wherein persons who have suffered from sexual assault or harassment may report and have their reports processed.

(*Id.* at 28, ¶ 11 of Prayer for Relief.)

## ARGUMENT

**I. PLAINTIFFS LACK STANDING TO SEEK THE REQUESTED DECLARATORY AND INJUNCTIVE RELIEF.**

"[W]hile a plaintiff who has been constitutionally injured can bring a § 1983 action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). "Thus, standing to obtain injunctive and declaratory relief must be analyzed separately from standing to obtain retrospective relief." *Id.*

"[A] plaintiff lacks standing to maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Sause v. Bauer*, 859 F.3d 1270, 1277 (10th Cir. 2017). This requires that the plaintiff "face[] a real and immediate threat" of experiencing the same constitutional violation in the future. *Id.* at 1277-78.

Here, there are no allegations indicating any of the Plaintiffs face a real an immediate threat of experiencing sexual harassment, assault, or rape by a supervisor or superior at Provo City in the future. (*See* Compl.) Mr. King was ultimately placed on administrative leave, and his resignation demanded. (*Id.* ¶¶ 115, 117.) He resigned and no longer works for Provo City. (*Id.* ¶ 55.) Ms. Collett likewise no longer works for Provo City (*id.* ¶ 32), and there are no allegations of an ongoing relationship between Ms. Van De Graaff and Provo City (*see* Compl.). And, while it appears the remaining Plaintiffs are still employed by Provo City, there are no allegations establishing there is a "good chance" they would experience similar sexual misconduct by some unidentified supervisor or superior at Provo City in the future.[3] (*See id.*) Absent any such allegations, Plaintiffs do not have standing to seek their requested declaratory and injunctive relief. *See Sause*, 859 F.3d at 1277-78 (holding the plaintiff lacked standing to

---

[3] Ms. Newell has alleged that, "[t]o this day, [she] remains fearful of retribution from current administration as Chief King's behavior was allowed to occur." (Compl. ¶ 84.) This, however, does not establish a fear that Ms. Newell will be subjected to *sexual harassment or assault* by a supervisor or superior at Provo City in the future. Even if it did, the Tenth Circuit has held that an allegation a plaintiff "continues to fear to this day that she will have a similar encounter with defendants sometime in the future" is insufficient to establish standing. *Sause*, 859 F.3d at 1278 (citation, internal quotation marks, and brackets omitted). "[I]t's the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *Id.* (citation and internal quotation marks omitted). "Thus, the emotional consequences of the [alleged acts] simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendants." *Id.* (citation, internal quotation marks, and brackets omitted).

seek declaratory and injunctive relief where she merely alleged "that 'the wrongs alleged' . . . 'continue to occur,'" and she "fail[ed] to establish she 'face[s] a real and immediate threat' that (1) the defendants will again enter her home while investigating a crime; (2) she will again kneel and pray; and (3) the defendants will again order her to stand up and stop praying so they can harass her").

## II. PROVO CITY IS IMMUNE FROM PLAINTIFFS' EIGHTH CAUSE OF ACTION.

In Utah, "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function" unless immunity has been waived.  Utah Code Ann. § 63G-7-201(1).  To determine whether immunity has been waived, courts engage in a three-part inquiry.  *Larsen v. Davis Cty. Sch. Dist.*, 2017 UT App 221, ¶ 10, 409 P.3d 114.  "First, [they] examine whether the activity undertaken is a governmental function." *Id.* (citation and internal quotation marks omitted). "Second, [they] determine whether governmental immunity was waived for the particular activity." *Id.* "Finally, [they] look to see whether immunity has been reinstated through a statutory exception to the immunity waiver." *Id.*

A straightforward application of this three-step analysis as recently applied in *Larsen* demonstrates that Provo City retains immunity for Plaintiffs' eighth cause of action for negligent employment, supervision, and retention.  First, there can be little question that operating a police department constitutes a governmental function to which immunity attaches.  *See* Utah Code Ann. § 63G-7-101(5)(a) (broadly defining "governmental function"); *Lehi City v. Meiling*, 48 P.2d 530, 545 (Utah 1935) (Hansen, C.J., concurring) ("The function which a municipality

exercised for the protection of property and persons within its confines—police and fire protection—were perhaps most fundamentally governmental.").

Second, for the purpose of this motion, Provo City concedes that an action may ordinarily be brought for an injury caused by the negligence of a government employee committed within the scope of employment. Utah Code Ann. § 63G-7-301(2)(i). However, the Act retains immunity for Provo City in the circumstances alleged here. If an injury is "proximately caused by a negligent act or omission of an employee," but "arises out of, in connection with, or results from . . . assault, battery, . . . [or] infliction of mental anguish," the governmental entity retains immunity. Utah Code Ann. § 63G-7-201(4)(b).

The Utah Court of Appeals recently evaluated the applicability of this retention of immunity to claims against a school district for negligently hiring, training, retaining, and supervising a teacher who was alleged to have had inappropriate sexual contact with a student. The Court affirmed the dismissal of the claims against the school district on the basis the district was immune under what is now Section 63G-7-201(4)(b). It explained that under either of two possible interpretations of the Act's waiver and retention scheme, the teacher's "assault" or "battery" of the student was a proximate cause of the student's claimed injuries:

> In his complaint, Larsen alleges that the District negligently hired, supervised, and retained Teacher. In addition, Larsen alleges that Teacher, while acting within the course and scope of her employment with the District, "initiated a romantic relationship" with Larsen that included, eventually, "inappropriate sexual contact" and "sexual intercourse." Larsen states specific claims—his fourth and fifth causes of action—against the District, asserting that the District is vicariously liable for Teacher's "sexual misconduct" and "seduction." Teacher's inappropriate sexual contact with Larsen is inextricably intertwined with each cause of action. And, as noted below, Larsen alleges only one set of damages: that all of the conduct described in the complaint caused him to incur "medical expenses" as well as "severe emotional and mental distress." The relationship described in the complaint between Teacher's inappropriate sexual contact with Larsen and

8

> Larsen's injuries is more than just a "but-for" causal link. Rather, Teacher's contact is a proximate cause of Larsen's injury: a "cause which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred."

*Larsen*, 2017 UT App 221, ¶ 29. Accordingly, because the teacher's conduct, which is immune conduct under Section 63G-7-201(4)(b), was "*a* proximate cause" of the student's injuries, the district retained immunity for the negligence claims asserted against it. *Id.* ¶¶ 40-42.

Just as in *Larsen*, Plaintiffs have alleged Provo City was negligent in "hiring, failing to supervise, and retaining King." (Compl. ¶ 192.) They have likewise additionally alleged that Mr. King, while acting within the course and scope of his employment with Provo City, sexually assaulted, raped, and sexually harassed one or more of them. (*Id.* ¶¶ 126-32, 163-68, 171-74, 177-78.) The specific state law claim asserted against Provo City is based on this alleged "sexual misconduct" by Mr. King. (*Id.* ¶ 191.) And, as in *Larsen*, Plaintiffs have alleged only one set of damages—physical and emotional harm resulting in lost wages and medical expenses.[4] (*Id.* ¶¶ 136 (identifying damages), 192 (alleging as a result of Provo City's alleged negligence, Plaintiffs "suffered the injuries described above").) Just as the teacher's conduct in *Larsen* was a proximate cause of the student's injuries, Mr. King's alleged sexual misconduct is a proximate cause of Plaintiffs' claimed injuries.

---

[4] Notably, in *Larsen*, the Court rejected the plaintiffs argument that "the harm he sustained could be separated into two distinct categories: damage sustained as a result of physical contact with Teacher, and damage sustained as a result of non-physical interactions . . . with Teacher," such that he could still sue for the second category of damages. *Larsen*, 2017 UT App 221, ¶ 38. Although the plaintiff had not actually pled his damages in this manner, the Court noted even if he had, "that effort would not have availed him": "Even under Larsen's creative approach, Teacher's battery is still '*a* proximate cause' of some of Larsen's injuries, and therefore the District retains immunity." *Id.* ¶ 40.

Under *Larsen*, Provo City is plainly immune from Plaintiffs' eighth cause of action for negligent employment, supervision, and retention.

### III. PUNITIVE DAMAGES ARE NOT AVAILABLE AGAINST MUNICIPALITIES SUCH AS PROVO CITY.

"Both 42 U.S.C. § 1983 and Utah law bar punitive damage awards against municipal agencies." *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1307 (10th Cir. 2003) (citing the former version of Utah Code § 63G-7-603(1)(a)); *see also* Utah Code § 63G-7-603(1)(a) ("A judgment may not be rendered against a governmental entity for exemplary or punitive damages."). Accordingly, Plaintiffs' claim for punitive damages against Provo City (Compl. at 28, ¶ 7) should be dismissed with prejudice. *See Catlin v. Salt Lake City Sch. Dist.*, No. 2:08-CV-00362-CW-PMW, 2014 WL 4662466, at *5 (D. Utah Sept. 18, 2014) (unpublished) (adopting the magistrate judge's recommendation that "Plaintiff cannot recover punitive damages against SLCSD, and her claim for punitive damages should be dismissed with prejudice" based on the above authority).

### CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claim for declaratory and injunctive relief for lack of standing. The Court should further dismiss Plaintiffs' eighth cause of action and the claim for punitive damages against Provo City with prejudice.

### REQUEST FOR HEARING

Pursuant to DUCivR 7-1(f), Provo City requests argument on their motion. They believe argument will be useful given the unique nature of the Plaintiffs' claims and Provo City's assertion immunity under Utah's Governmental Immunity Act.

DATED this 19th day of April, 2018.

                                                      SNOW CHRISTENSEN & MARTINEAU

                                                     */s/ Heather S. White*
                                                     Heather S. White
                                                     Nate R. Skeen
                                                     Dani N. Cepernich
                                                     *Attorneys for Defendant Provo City*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April, 2018, I electronically filed the foregoing **PROVO CITY'S MOTION TO DISMISS PLAINTIFFS' EIGHTH CAUSE OF ACTION AND THEIR CLAIMS FOR PUNITIVE DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF** with the Clerk of the Court using the CM/ECF System:

    Katherine Venti
    Michael W. Young
    Alan S. Mouritsen
    PARSONS BEHLE & LATIMER
    201 S. Main Street, Ste. 1800
    Salt Lake City, UT 84111
    kventi@parsonsbehle.com
    myoung@parsonsbehle.com
    amouritsen@parsonsbehle.com
        *Attorneys for Plaintiffs*

                                            */s/ Annette D. Gamero*